**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**Bruce Scott Moore II**

v. Case No. 19-cv-561-PB

**Andrew Saul, Commissioner**
**Social Security Administration**

**REPORT AND RECOMMENDATION**

Bruce Scott Moore II challenges the denial of his application for disability insurance benefits pursuant to 42 U.S.C. § 405(g). He contends that the Administrative Law Judge ("ALJ") improperly evaluated medical opinions in his record. The Commissioner, in turn, moves for an order affirming the ALJ's decision. Finding no reversible error, the court recommends that the district judge deny Moore's motion and grant the Commissioner's motion.

## I. STANDARD OF REVIEW

The court is authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner. See 42 U.S.C. § 405(g). That review is limited, however, "to determining whether the [Commissioner] used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211

F.3d 652, 655 (1st Cir. 2000). The court defers to the Commissioner's findings of fact, so long as those findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the Commissioner's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. The Commissioner's findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). "Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [him], not for the doctors or for the courts." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (internal quotation marks and brackets omitted).

## II. BACKGROUND[1]

### A. Procedural Facts

Moore is a 40-year-old man with a GED. He worked as a pizza delivery driver until November 2009, when two dogs attacked him during a delivery and bit him multiple times. Moore injured his right ankle while trying to escape. He has not worked since then.

In July 2017, Moore filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). In both applications, he claimed disability as of November 28, 2009, due to degenerative disc disease of the neck and back, limited range of motion in the neck and back, chronic neck and back pain, multiple herniated discs, and nerve damage in the upper left and lower right extremity. His SSI claim was approved at the initial level of review based on a finding that he was disabled due to severe depressive disorder as of July 21, 2017, his application date. His DIB claim was denied, however, on the ground that there was insufficient evidence to evaluate the claim prior to his date last insured of December 31, 2014.

Moore appealed the denial of his DIB claim. He testified at a hearing before ALJ Dory Sutker on September 13, 2018. At

[1] The court provides a brief summary of the relevant facts. A more detailed recitation appears in the parties' statements of material facts (Doc. Nos. 8-2 & 10), which the court incorporates by reference. See L.R. 9.1(b)-(c).

the hearing, Moore amended his alleged disability onset date to December 31, 2014, his date last insured. The ALJ denied the claim on November 28, 2018, finding that he was not disabled on or before his date last insured. See Administrative Transcript ("Tr.") 10-32. The Appeals Council denied his request for review in April 2019, rendering the ALJ's decision the final decision of the Commissioner. See Tr. 1-6. Moore now appeals.

**B. Medical Evidence**

In December 2009, Moore was diagnosed with a tear of the peroneus brevis tendon in the right foot, which he sustained when two dogs attacked him while he was delivering pizza. Dr. Mark Geppert, an orthopedic surgeon, performed peroneal tendon repair the following month. When Moore experienced a severe increase in pain after the surgery, Dr. Geppert diagnosed sural nerve injury. A sural nerve block performed in February 2010 led to a temporary improvement in pain. Moore was subsequently treated with pain medication while exploring further surgical intervention. See Tr. 1181.

Dr. Geppert completed a medical form on Moore's behalf for purposes of a worker's compensation claim in April 2010. He stated that Moore suffered from sural nerve injury, following peroneal tendon abridgment in the right foot, related to his on-the-job accident. According to Dr. Geppert, Moore was limited

to "sedentary work only" with a maximum lifting capacity of 5 pounds and he was unable to drive. Tr. 1182.

Independent medical examiner Dr. William Boucher examined Moore in June 2010 in connection with his worker's compensation claim. The examination revealed severe hyperesthesia over the right ankle scar, with decreased sensation to soft touch and dysesthesia over the dorsal lateral right foot and the fourth and fifth toes.[2] Tr. 436. Dr. Boucher opined that Moore "has at least a light work capacity" and could return to full-time work with certain restrictions. He could lift 30 pounds occasionally, carry "perhaps" 20 pounds for a short distance, sit for "any duration," stand for "perhaps" 30 minutes at a time, walk for 5 minutes at a time and 15 minutes per hour, push and pull occasionally with "perhaps" 30-pound effort, bend and twist frequently, squat, kneel, crawl, and climb stairs occasionally, and could never climb ladders. Dr. Boucher noted that Moore had no upper extremity limitations. Tr. 439.

Dr. Boucher examined Moore again in March 2011. In the interim, Moore had undergone excision and implantation of the nerve at the level of the mid-calf in an attempt to relieve his sural neuropathy. Moore reported some improvement in the level

[2] Hyperesthesia is abnormal acuteness of sensitivity to touch, pain, or other sensory stimuli. Dysesthesia is abnormal or unpleasant sensation in response to, or in the absence of, such stimuli. Stedman's Medical Dictionary 920, 596 (28th ed. 2006).

of pain in his foot following the surgery but complained of ongoing pain in the calf, at the site of the implantation. Dr. Boucher again opined that Moore retained "at least a light work capacity," with similar exertional and postural restrictions that he identified in his prior report. Tr. 429-30.

Treating provider Dr. Terry Bennett completed a medical form in August 2011 in connection with Moore's worker's compensation claim. Dr. Bennett diagnosed nerve damage following two surgeries on Moore's right ankle. Regarding treatment plan, he noted that Moore was "[a]t endpoint," did not want to be on pain medication, and was looking for other options. Dr. Bennett opined that Moore could work a maximum of 4-6 hours per day with limited walking. In addition, he was limited to lifting and carrying no more than 20 pounds, occasional kneeling, climbing, and walking, frequent standing and driving, and no squatting. Tr. 447-48.

In December 2017, consultative examiner Dr. Robert Phelps examined Moore and reviewed 21 pages of medical records. He noted that the records documented treatment for back pain with minimal disc space narrowing, a pulmonary embolus, right shoulder pain with calcific tendinosis, right peroneal tendon repair with sural nerve injury and reflex sympathetic dystrophy, right foot and calf pain, and chronic insomnia. According to Dr. Phelps, Moore could lift and carry up to 10 pounds

occasionally, stand or walk for 5 minutes without interruption and up to 1 hour daily, occasionally reach, handle, finger, feel, push, and pull with his upper extremities bilaterally, occasionally operate foot controls with his lower extremities bilaterally, occasionally stoop and climb ramps or stairs, occasionally drive, and could not balance, kneel, crouch, or crawl. Tr. 1123-29.

That same month, state agency physician Dr. Nisha Singh reviewed the available evidence, including Dr. Phelps' report. Dr. Singh stated that the evidence was insufficient to evaluate Moore's alleged disability during the period from November 28, 2009, his original alleged disability onset date, through his date last insured of December 31, 2014. Tr. 93. In the "Current Evaluation" portion of her opinion, Dr. Singh opined that Moore could lift and carry 10 pounds occasionally and less than 10 pounds frequently, stand or walk for "[s]ignificantly less" than 2 hours, sit for "[a]bout" 6 hours, occasionally balance, stoop, and climb ramps or stairs, never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds, and must avoid even moderate exposure to hazards. Tr. 95-98.

In September 2018, orthopedic surgeon Dr. Frank Graf completed a medical source statement on Moore's behalf after examining him and reviewing the medical records. Dr. Graf opined that Moore's pain symptoms would constantly interfere

with his attention and concentration, and that he was likely to be absent from work more than four days per month as a result of his impairments or treatment. According to Dr. Graf, Moore could sit for 1 hour and 10 minutes at a time for a total of about 2 hours, stand for 1 hour and 5-10 minutes at a time for about 2 hours total, lift up to 20 pounds occasionally, perform only occasional postural maneuvers, and should use a cane for standing or walking. In addition, he would require a job that permits shifting positions at will and frequent unscheduled breaks. Tr. 1240-47.

**C. The ALJ's Decision**

The ALJ assessed Moore's claim under the five-step, sequential analysis required by 20 C.F.R. § 404.1520. At step one, she found that Moore had not engaged in substantial gainful activity as of December 31, 2014, his amended alleged disability onset date. Tr. 16. At step two, the ALJ found that Moore's "status post peroneal tendon tear; status post surgery; and obesity" qualified as severe impairments through his date last insured. Tr. 16. His degenerative disc disease of the lumbar spine, right shoulder pain, and chest pain were not severe prior to his date last insured. Tr. 16-17. At step three, the ALJ determined that, through the date last insured, none of Moore's impairments, considered individually or in combination,

qualified for any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19.

The ALJ then found that Moore had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) through his date last insured, except that he could lift and carry 10 pounds occasionally and less than 10 pounds frequently, stand for a total of 1 hour in 15-minute increments, walk for a total of 1 hour in 30-minute increments, and sit up to 8 hours. In addition, he could never crawl, crouch, or climb ladders, ropes, or scaffolds, could rarely climb stairs, and could occasionally stoop, kneel, and balance. The RFC finding also included limitations to avoid exposure to vibrations, such as handheld industrial power tools, and to avoid working around hazards, such as unprotected heights and dangerous moving machinery. Lastly, the ALJ noted that Moore could perform uncomplicated tasks that are typically learned in less than 30 days and could concentrate, persist, and stay on tasks for 2-hour blocks of time throughout the workday. Tr. 19.

The ALJ found the 2010 opinions of treating orthopedist Dr. Geppert and independent medical examiner Dr. Boucher "persuasive because they examined the claimant and their opinions are consistent with the medical evidence of record and congruent with their assessment findings." Tr. 20-21. Dr. Boucher's subsequent June 2011 examining opinion was "very persuasive" to

the ALJ and she gave it "great weight." The ALJ reasoned that he was an expert in internal medicine who examined Moore on two different occasions and the record, which "shows only mild to moderate deficits on examination," supported his conclusions. Tr. 21.

The ALJ concluded that the opinion of Dr. Singh, the state agency physician who reviewed the available record in December 2017, was "very persuasive" and gave it "great weight." The ALJ explained that her findings were consistent with the medical evidence, including diagnostic imaging showing that Moore's condition was not significantly limiting, his conservative treatment, and lack of indication that his condition had worsened prior to the date last insured. Tr. 22.

According to the ALJ, the August 2011 opinion of treating physician Dr. Bennett was "somewhat persuasive" and she gave it "partial weight." The ALJ reasoned that Dr. Bennett's statement that Moore could work only part time was inconsistent with Dr. Boucher's opinion that he could work full time with some restrictions. In addition, treatment notes between Dr. Boucher's and Dr. Bennett's examinations did not show any significant deterioration to warrant a part-time accommodation. Finally, the ALJ noted that her RFC finding accounted for any residual deficits from Dr. Bennett's opinion. Tr. 22-23.

The ALJ found "somewhat persuasive" the 2017 opinion of consultative examiner Dr. Phelps. Although Dr. Phelps did not relate his opinion to a period prior to the date last insured and only examined 21 pages of medical records, the ALJ noted that his opinion was generally consistent with the medical evidence prior to the date last insured. The ALJ added that any residual deficits from Dr. Phelps' opinion were reflected in the RFC finding. Tr. 23.

Finally, the ALJ found that the September 2018 opinion of examining orthopedic surgeon Dr. Graf was "less persuasive" and gave it "little weight." The ALJ reasoned that Dr. Graf did not cite to the record in support of the limitations he identified, and his opinion was based on a one-time examination performed well after the date last insured. According to the ALJ, the medical evidence prior to the date last insured showed that Moore had full joint mobility of the extremities and no documented spinal impairment. Although Dr. Graf noted that Moore had an MRI of his lumbar spine in 2009, which was reported to Moore as demonstrating disc bulges at L4-5 and L5-S1, the ALJ stated that there was no objective evidence documenting this finding. Lastly, the ALJ noted that Dr. Graf examined Moore "not in an attempt to seek treatment for symptoms, but rather through attorney referral in an effort to generate evidence for the hearing." Tr. 23-24.

Relying on the testimony of a vocational expert, the ALJ then found at step four that Moore could not perform his past relevant work as a delivery driver, cook helper, or cook. Tr. 24. At step five, however, the ALJ found that, through the date last insured, jobs existed in significant numbers in the national economy that Moore could perform, such as document preparer, addresser, and stuffer. Tr. 25. Accordingly, the ALJ concluded that Moore had not been disabled as December 31, 2014, his date last insured, or during the period between December 31, 2014 and June 30, 2017. Tr. 26.

## III. ANALYSIS

Moore challenges the ALJ’s decision on the ground that the ALJ improperly weighed certain medical opinions in the record. Because substantial evidence supports the ALJ’s evaluation of those opinions, remand is not necessary.

An ALJ is not required to “defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant’s] medical sources.” 20 C.F.R. § 404.1520c(a) (effective for claims filed on or after March 27, 2017). Rather, an ALJ must evaluate all medical opinions for persuasiveness according to the following factors: (1) supportability; (2) consistency with other record evidence; (3) relationship with the claimant; (4) specialization of the

medical source; and (5) other factors that "tend to support or contradict a medical opinion," such as the source's familiarity with other evidence in the record, or understanding of SSA policies and evidentiary requirements. Id. § 404.1520c(c). Sustainability and consistency are "the most important factors," and an ALJ must articulate how she considered them in evaluating a medical opinion. Id. § 404.1520c(b); see Purdy, 887 F.3d at 13 n.8 (discussing the equivalent regulation for SSI claims). An ALJ generally is not required to explain how she evaluated the remaining factors. See 20 C.F.R. § 404.1520c(b).

Moore alleges that the ALJ erred in evaluating the opinions of Drs. Singh, Geppert, Boucher, and Phelps. The ALJ gave "great weight" to Dr. Singh's reviewing opinion, found the 2010 opinions of treating orthopedist Dr. Geppert and independent medical examiner Dr. Boucher "persuasive," and deemed the opinion of consultative examiner Dr. Phelps "somewhat persuasive." The court addresses each in turn.[3]

1. Dr. Singh's Opinion

Moore argues that the ALJ erroneously gave "great weight" to the reviewing opinion of Dr. Singh because Dr. Singh

[3] Moore does not allege any error in the ALJ's decision to give "great weight" to Dr. Boucher's June 2011 opinion, "partial weight" to the opinion of treating physician Dr. Bennett, or "little weight" to Dr. Graf's examining opinion. Accordingly, the court does not address the ALJ's evaluation of those opinions.

stated there was insufficient evidence to evaluate Moore's RFC prior to his date last insured and provided only a current evaluation as of December 2017. The Commissioner responds that the ALJ properly gave great weight to Dr. Singh's opinion that Moore could do a limited range of sedentary work and did not accept her opinion about the sufficiency of the evidence.

The issue before the ALJ was whether Moore was disabled prior to his date last insured, which was December 31, 2014. See SSR 18-01p, 2018 WL 4945639, at *5 (Oct. 2, 2018) ("[A] claimant who has applied for disability insurance benefits under title II of the Act must show that: He or she met the statutory definition of disability before his or her insured status expired . . . ."). Dr. Singh did not render an opinion regarding Moore's disability prior to his date last insured because she concluded that there was insufficient evidence to assess his condition. See Tr. 93. Her opinion that Moore could perform limited sedentary work as of December 2017, three years after his date last insured, was thus irrelevant to the ALJ's inquiry. Because there was no opinion for the relevant time period for the ALJ to credit, the ALJ's reliance on Dr. Singh's opinion concerning Moore's current functioning was an error.

The ALJ's error, however, is harmless because it does not change the outcome of her decision. See, e.g., Zayas v. Comm'r of Soc. Sec., No. 8:16-CV-2722-T-JSS, 2018 WL 564551, at *4

(M.D. Fla. Jan. 26, 2018) (finding ALJ's reliance on medical opinion harmless where its source concluded there was insufficient evidence to render an opinion since "the ALJ's ultimate conclusions would not change because there was no opinion to credit"); Fulton v. Colvin, No. CIV-13-1108-HE, 2014 WL 7899420, at *11–12 (W.D. Okla. Nov. 24, 2014), R. & R. adopted, No. CIV-13-1108-HE, 2015 WL 737044 (W.D. Okla. Feb. 19, 2015), aff'd, 631 F. App'x 498 (10th Cir. 2015) (concluding that ALJ's decision to give "great weight" to medical opinions finding insufficient evidence to assess claimant's impairment was "irrelevant, harmless, and does not warrant a remand"). Even if the ALJ had agreed with Dr. Singh that the evidence was insufficient to evaluate Moore's disability prior to his date last insured, the ALJ nonetheless would have denied his claim. This is because a claimant bears the responsibility to show that his condition was disabling prior to the date last insured. See SSR 18-01, 2018 WL 4945639, at *4 ("In general, an individual has a statutory obligation to provide us with the evidence to prove to us that he or she is disabled. This obligation includes providing us with evidence to prove to us when he or she first met the statutory definition of disability."); see also 20 C.F.R. § 1512(a) ("In general, you have to prove to us that you are . . . disabled."). Although the agency must make reasonable efforts to obtain evidence on a

claimant's behalf, when there is insufficient evidence to evaluate a claim despite such efforts, an ALJ must make a determination based on the available evidence. See 20 C.F.R. § 404.1520b(b). Here, other medical opinions in the record, including those discussed below, supported the ALJ's RFC finding. Accordingly, any error in the ALJ's assessment of Dr. Singh's opinion does not necessitate remand.

2. Opinions of Drs. Geppert and Boucher

The ALJ found the 2010 opinions of treating provider Dr. Geppert and independent examiner Dr. Boucher "persuasive" because both doctors examined Moore and their opinions were supported by their assessment findings and consistent with other record evidence. Dr. Geppert opined that Moore could do sedentary work with a maximum lifting capacity of 5 pounds, whereas Dr. Boucher stated that he could do light work with a maximum lifting capacity of 30 pounds. Moore alleges two errors in the ALJ's weighing of their opinions. Neither is persuasive.

First, Moore maintains that the ALJ erroneously failed to address the difference in the opinions as to how much weight Moore could lift. As the Commissioner points out, the ALJ was not required to detail how she evaluated individually every single limitation assessed by each medical source. See 20 C.F.R. § 404.1520c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative

medical finding from one medical source individually.”). The ALJ’s analysis supportably focused on the doctors’ overall opinions that Moore could work full time with some restrictions and thus that his physical condition was not significantly limiting.

In any event, Dr. Geppert’s opinion that Moore could lift no more than 5 pounds was contradicted by Moore’s own statement to Dr. Boucher that he could lift up to 30 pounds, see Tr. 439, as well as by other doctors’ assessments. The ALJ ultimately crafted Moore’s RFC with a 10-pound lifting limitation based on all the evidence in the record. It is within the province of the ALJ to “piece together the relevant medical facts from the findings and opinions of multiple physicians,” as well as other relevant evidence. Evangelista v. Sec’y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987).

Second, Moore argues that the ALJ failed to consider the doctors’ relationships with him in evaluating their opinions. But the ALJ did note that Dr. Geppert was a treating provider, whereas Dr. Boucher was an independent examiner. See Tr. 20. To the extent Moore contends that Dr. Geppert’s opinion was entitled to more weight because of the treating relationship, an ALJ is no longer required to defer or give controlling weight to a treating source’s opinion. See 20 C.F.R. § 404.1520c. Instead, a source’s relationship with the claimant is one of the

factors an ALJ must consider when evaluating a medical opinion but generally need not articulate how she considered it. See id. Here, the ALJ considered the relevant factors and sufficiently articulated why she found both Dr. Geppert's and Dr. Boucher's opinions persuasive. No more was needed.

3. Dr. Phelps' Opinion

Moore finally contends that the ALJ's evaluation of Dr. Phelps' opinion as only "somewhat persuasive" warrants remand because the ALJ did not adequately evaluate the doctor's opinion that Moore could only occasionally use his hands and arms. This limitation would preclude his ability to perform the jobs that the vocational expert identified. Moore's challenge has no merit.

Dr. Phelps based his opinion in part on his assessment of "mildly limited shoulder abduction and forward flexion bilaterally" and treatment records documenting right shoulder pain. See Tr. 1125. The ALJ, however, was not persuaded that Moore's shoulder condition caused any functional limitations. She reasoned that a February 2013 X-ray of his right shoulder showed no significant abnormality, and a November 2013 examination reflected that he could perform the full range of motion with both arms. See Tr. 16, 21. These inconsistencies support the ALJ's decision to discount Dr. Phelps' assessment to the extent it was based on a shoulder impairment.

Dr. Phelps further supported his assessment by pointing to evidence of "treatment for back pain with minimal disc space narrowing by x-ray." Tr. 1123; see Tr. 1125. Here, too, the ALJ pointed to substantial evidence showing that Moore's lumbar spine impairment was not severe. At bottom, Moore quibbles with the ALJ's interpretation of that evidence. The ALJ correctly noted that Moore denied back pain to his providers in November 2012 and May 2013. See Tr. 16. Moore argues that those treatment notes may have incorrectly recorded his complaints because they apparently contain inconsistencies unrelated to his back pain. Even if such inconsistencies existed, it is the ALJ's job, not the court's, to resolve conflicts in the evidence. See Irlanda Ortiz, 955 F.2d at 769.

The ALJ also appropriately described the June 2018 treatment notes as showing an "essentially unremarkable" review of Moore's spine. See Tr. 16. The treatment notes reflected intact range of movements, normal strength, and normal straight leg raise ability. See Tr. 1225. Although, as Moore points out, the notes also show abnormal posture and gait, discomfort or tenderness, and muscle spasms, those findings do not undermine the ALJ's assessment of the notes. Cf. Floyd v. Berryhill, No. 15-cv-456-PB, 2017 WL 2670732, at *6 (D.N.H. June 21, 2017) (finding that treatment notes showing generally normal gait, reflexes, strength, spinal mobility, and negative

straight-leg raising were "supportably normal" even though they also showed back tenderness, occasional antalgic gait, and occasional limited range of motion in the back). Similarly, Moore's rejoinder that the ALJ discounted his complaints of back pain in April 2014 because he did not allege any injury or trauma falls flat. The treatment notes the ALJ cited show that Moore still had a steady gait and normal motor strength, sensation, and reflexes despite his alleged pain. See Tr. 577. "That the ALJ drew different (but reasonable) inferences than claimant draws from the same evidence does not provide an adequate basis for reversal or remand." Kalman v. Barnhart, No. Civ.03–022–M, 2004 WL 848224, at *4 (D.N.H. Apr. 20, 2004) (citing Irlanda Ortiz, 955 F.2d at 769). Accordingly, the ALJ's evaluation of Dr. Phelps' opinion is entitled to deference.

## IV. CONCLUSION

For the aforementioned reasons, Moore's motion for an order reversing the Commissioner's decision (Doc. No. 8) should be denied, the Commissioner's motion for an order affirming his decision (Doc. No. 9) should be granted, and the clerk of the court should be directed to enter judgment in favor of the Commissioner and close the case.

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The 14-day period may be extended upon

motion. Failure to file a specific written objection to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

Andrea K. Johnstone
United States Magistrate Judge

December 13, 2019

cc: D. Lance Tillinghast, Esq.
Kevin M. Parrington, Esq.